UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
RUTH SINNI,

                                 **Plaintiff,**

                        -against-

**FOREST HILLS HOSPITAL, et al.**

                                 **Defendants.**
-----------------------------------------------------------------x

**MEMORANDUM AND ORDER**

**09-CV-4572 (SLT)**

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

      Plaintiff Ruth Sinni ("plaintiff") commenced this lawsuit in October 2009, charging that the three defendants -- Forest Hills Hospital (the "Hospital"), North Shore-Long Island Jewish Health System ("LIJ") and Geeta Nandallal ("Nandallal") (collectively, "defendants") -- violated the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and similar state and municipal antidiscrimination laws. See generally Complaint ("Compl."), ECF Docket Entry ("DE") #1. More specifically, plaintiff, a registered nurse still employed in the Hospital's Nursery Department, alleges that, in June 2006, Nandallal, her supervisor, denied her request for an accommodation on account of her knee-related disability. See id. ¶¶ 19-24. Although the Hospital's Human Resources ("HR") Department subsequently granted plaintiff an accommodation, Nandallal is alleged to have "embarked on a campaign of harassment and retaliation," thereby creating "a hostile work environment based on Plaintiff's disability and the exercise, by her, of rights guaranteed by the ADA" and state and local law. Id. ¶¶ 25-28.

      On March 7, 2011, months after the close of fact discovery, plaintiff filed a letter-

motion to compel defense responses to two interrogatories (Interrogatories Nos. 24 and 25), served one year earlier, seeking information concerning disability discrimination claims filed against any of the three defendants over the course of a number of years. See Letter to the Court from Ralph A. Somma (March 7, 2011) ("Pl. 3/7/11 Letter"), DE #48. Defendants oppose the motion as untimely and on the merits. See Letter to the Court from Lauren M. Levine (dated March 9, 2011 but docketed March 11, 2011) ("Def. 3/11/11 Letter"), DE #52. For the reasons that follow, plaintiff's application is denied on both grounds.

## DISCUSSION

### I. PLAINTIFF'S APPLICATION IS UNTIMELY

Apparently conceding that her application is untimely, plaintiff urges the Court to exercise its broad discretion to consider an untimely motion to compel. See Letter to the Court from Ralph A. Somma (March 9, 2011) ("Pl. 3/9/11 Letter"), DE #50, at 2 (citing Microsoft Corp. v. Fed. Ins. Co., No. M8-85 (HB), 2003 WL 548758, at *2 (S.D.N.Y. Feb. 25, 2003)). The facts of this case do not justify consideration of plaintiff's tardy application.

Apart from certain limited exceptions not relevant to this dispute, fact discovery in this case closed on November 29, 2010. See Endorsed Order (Nov. 22, 2010), DE #27; see also Endorsed Order (Jan. 28, 2011), DE #47. The interrogatories that are the subject of plaintiff's application were served in March *2010*, nearly a year ago,[1] and defendants objected to those interrogatories in responses served on June 9, 2010. See Def. 3/11/11 Letter at 2. Plaintiff's motion to compel responses to those interrogatories was not filed until nine months later, on

---

[1] See Excerpts from Defendants' Response to Plaintiff's First Set of Interrogatories ("Def. Response"), D.E. #48-1, at 1, attached as first exhibit to Pl. 3/7/11 Letter.

March 7, 2011.[2]

In an effort to justify the lengthy delay in bringing the interrogatory dispute to the Court's attention, plaintiff references ongoing communications between the parties aimed at resolving this issue without judicial intervention. See Pl. 3/9/11 Letter at 1. Suffice it to say, the Court encourages parties to negotiate in good faith to eliminate or narrow discovery disputes; indeed, under both the federal and local rules, such discussions are a precondition to moving for judicial resolution of discovery disputes. See Fed. R. Civ. P. 37(a)(1); E.D.N.Y. Local Civ. R. 37.3(a). Nevertheless, by plaintiff's account, the discussions in this case commenced in November 2010, just weeks before the end of fact discovery. See Pl. 3/9/11 Letter at 1. Plaintiff provides no explanation whatsoever for having waited nearly six months from receipt of defendants' objections before offering to narrow the subject interrogatories and commencing discussions with defense counsel. Under these circumstances, no good cause showing has been made so as to disregard plaintiff's dereliction and effectively reopen fact discovery. On this ground alone, plaintiff's motion to compel should be denied.

## II. THE INFORMATION SOUGHT IS NOT DISCOVERABLE

In any event, the information sought by plaintiff is overly broad and not discoverable. The two interrogatories, as originally propounded a year ago, sought a broad array of

---

[2] In the interim, on January 3, 2011 -- after the close of fact discovery -- plaintiff filed a motion to compel documentary discovery, see Letter to the Court from Ralph A. Somma (Jan. 3, 2011), DE #39, which the Court denied on the merits. See Memorandum and Order (Jan. 10, 2011), DE #42.

information, for a rather lengthy period of time,[3] with respect to "each claim of disability discrimination filed against the defendant"[4] either (a) with the EEOC and/or state or local human rights agencies (Interrogatory No. 24), and/or (b) in any federal or state court (Interrogatory No. 25).[5]  See Def. Response, at 2.  Defendant responded to those

---

[3]  Plaintiff has appended to her motion only a three-page excerpt from defendants' response to her first set of interrogatories, not including the preliminary and definitional sections.  See Def. Response.  Therefore, the Court cannot ascertain from the record the period of time originally encompassed within plaintiff's interrogatories.  The Court infers, however, that the temporal scope was extremely broad, as plaintiff has acknowledged that, six months later, she "narrowed those interrogatories to the time period January 1, 2005 to the present."  Pl. 3/7/11 Letter at 1; see also Pl. 3/9/11 Letter at 1.

[4]  Although the term "defendant" is not defined in the excerpts filed with the Court, see *supra* note 3, it appears that the interrogatories demanded information concerning both institutional defendants: the Hospital and LIJ.  See Pl. 3/7/11 at 1.  LIJ is a healthcare provider that includes 15 hospitals in the New York Metropolitan area.  See LIJ website, About US, Hospitals and Facilities, available at:  http://www.northshorelij.com/NS LIJ/Hospitals+and+Facilities (last visited Mar. 18, 2011).  It is undisputed that plaintiff worked at only one of those hospitals, Forest Hills Hospital.  It was not until January 4, 2011, that plaintiff agreed to limit her interrogatories to information regarding claims against that Hospital.  See Pl. 3/7/11 Letter 1; Pl. 3/9/11 Letter at 1.

[5]  Interrogatory No. 24 reads as follows:

> With reference to each claim of disability discrimination filed against the defendant with the United States Equal Employment Opportunity Commission and/or the New York State Division of Human Rights and or the New York City Commission on Human Rights, please state the name, address, sex, age, race, national origin, and religion of each person who filed the claim; the employment history with the defendant of each person who filed the claim, including job titles and dates; the name and address of the office with which the claim was filed; a summary of each claim filed; the name and title of the agency investigator assigned to the claim; the results of the investigation by the agency; the final disposition of each claim; a description of all action taken as a result of each claim filed; and, attach a copy or state when and

(continued…)

interrogatories on June 9, 2010, objecting to each "on the grounds that it is vague, overly broad, unduly burdensome, designed solely to harass, not framed with the required specificity and particularity, not reasonably calculated to lead to the discovery of admissible evidence, and seeks information beyond the time frame and scope of the issues underlying this action." Def. Response, at 2; see also Def. 3/11/11 Letter at 2. On November 4, 2010 -- apparently after half a year of silence on this issue -- plaintiff offered to limit the covered time period to about six years. See Pl. 3/7/11 Letter at 1; Pl. 3/9/11 Letter at 2. The following month, on December 30, 2010, defendants served their First Amended Response to Plaintiff's Interrogatories, wherein they renewed their objections and supplemented their responses "in order to clarify that there were no claims of disability discrimination arising from the Nursery department in which Plaintiff works . . . ." Def. 3/11/11 Letter at 2. Thereafter, by email dated January 4, 2011, plaintiff for the first time agreed to narrow the two interrogatories to disability discrimination claims concerning the Hospital, rather than all of LIJ; however, plaintiff rejected the further limitation incorporated into defendants' response -- i.e., information concerning claims of disability discrimination relating to the Hospital's Nursery Department. See Pl. 3/7/11 Letter at 1; Pl. 3/9/11 Letter at 2.

Citing Sundaram v. Brookhaven National Laboratory, Associated Universities, Inc.,

---

[5](...continued)
where counsel may examine a copy of each complaint.

See Def. Response at 2. Interrogatory No. 25 is almost identical, except that it seeks the aforesaid information "[w]ith reference to each claim of disability discrimination filed against the defendant in the United States District Court and/or the Courts of the State of New York . . . ." Id.

No. CV-94-2330 (TCP), 1996 WL 563829, at *2 (E.D.N.Y. March 11, 1996), which denied a similar demand for discovery concerning employees outside plaintiff's "work unit," defendants argue that, since plaintiff's "entire claim rests on allegations of alleged mis-treatment [sic] she experienced at the hands of [defendant] Nandallal, her supervisor in the nursery department[,]" Def. 3/11/11 Letter at 2, "discovery related to non-party employees in departments other than the nursery has no discernable nexus to Plaintiff's complaint in this matter . . . ." Id. at 3. Given plaintiff's allegations in this case, this Court agrees. Specifically, the complaint alleges that it was defendant Nandallal who denied plaintiff's request for a disability accommodation, see Compl. ¶ 24, and Nandallal who created "a hostile work environment based upon Plaintiff's disability and the exercise, by her, of [her] rights" under the ADA and other similar laws. Id. ¶ 28; see id. ¶¶ 29-30. At both the initial conference and settlement conference before this Court, plaintiff's counsel focused almost exclusively on Nandallal's conduct. Against this backdrop, whether employees in other units of the Hospital filed claims of disability discrimination on the part of other supervisors has no bearing on Nandallal's intent or on any other issue in this case. See Bellinger v. Astrue, CV-06-321 (CBA), 2009 WL 2496476, at *5-6 (E.D.N.Y. Aug. 14, 2009) (denying similar motion to compel and collecting cases); Sundaram, 1996 WL 563829, at *2.

Plaintiff's reliance on the decision in Rifkinson v. CBS, No. 94CIV.7985(KTD)(JCF), 1997 WL 634514, at *2 (S.D.N.Y. Oct. 14, 1997), is unavailing, as that case involved evidence of other acts of gender discrimination by the individuals alleged to have made gender-based adverse employment decisions against the plaintiff. Nor does this case bear any

resemblance to Hollander v. American Cyanamid Co., 895 F.2d 80 (2d Cir. 1990), or Jhirad v. TD Sec. USA, Inc., No. 02 CIV.7509(VM)(HBP), 2003 WL 1872654 (S.D.N.Y. Apr. 10, 2003), which involved demands for statistical evidence in the context of claims of pattern-and-practice discrimination. Here, in contrast, plaintiff has not alleged any pattern or practice of discrimination, but instead asserts that her request for accommodation was denied by Nandallal, who thereupon embarked on a campaign of retaliation against her and created a hostile work environment.

In a further effort to justify the breadth of her discovery demands, plaintiff asserts, without citation to the record, that "Plaintiff's complaint as well as evidence gleaned from documents and deposition testimony reveals that Plaintiff was subjected to . . . discriminatory treatment and harassment from supervisors and executives outside the nursery department[,]" all on account of her disability. Pl. 3/7/11 Letter at 2. The record before the Court does not support that characterization of the claims and proof. On the contrary, the complaint alleges that the Hospital's HR Director *granted* plaintiff's request for an accommodation, thereby reversing Nandallal's alleged denial of the request. See Compl. ¶¶ 25-26. Furthermore, those allegations that specifically fault the HR Department and Nandallal's supervisors do not assert either failure to accommodate or disparate treatment based on disability; rather, plaintiff complains that after plaintiff's disability accommodation was granted by the HR Director, Nandallal engaged in a pattern of retaliation, and the HR Department and other executives took no remedial action with respect to that retaliatory behavior.[6] See id. ¶¶ 28-32.[7]

---

[6] However, in open court on June 14, 2010, plaintiff's counsel contradicted this assertion,
(continued…)

Plaintiff's interrogatories do not, however, seek information concerning other employees' complaints of supervisors' failure to remedy alleged retaliation; the interrogatories relate to complaints of disability discrimination, against the Hospital and all its employees -- despite the fact that plaintiff does not allege that anyone other than Nandallal engaged in that form of misconduct. Against this factual backdrop, defendants were amply justified in objecting to the scope of the interrogatories and limiting their substantive responses to complaints involving the Nursery Department. Cf. Rifkinson, 1997 WL 634514, at *3 (in allowing evidence of other acts of gender discrimination by the same individuals who took adverse action against the plaintiff, the court expressly distinguished prior acts that involved dissimilar forms of discrimination, i.e., sexual harassment as opposed to gender-related demotions or terminations).

## CONCLUSION

For the foregoing reasons, plaintiff's motion to compel is denied.

**SO ORDERED.**

**Dated:     Brooklyn, New York**
**March 18, 2011**

                                        **ROANNE L. MANN**
                                        **UNITED STATES MAGISTRATE JUDGE**

---

[6](…continued)
stating that after plaintiff complained to HR about Nandallal's retaliatory statements, an investigation was undertaken, as a result of which Nandallal was admonished.

[7] The complaint also alleges that "Defendants' supervisors" ignored plaintiff's allegations of unsafe staffing it the Nursery Department, see Compl. ¶¶ 34-37 -- an issue not addressed in the subject interrogatories.